The next case is United States v. Jennings. Good morning. My name is Molly Corbett. I'm with the Federal Public Defender in the Northern District of New York, and I represent the appellant Keith Jennings. The district court committed legal and factual error in denying the full reduction to Mr. Jennings under 3582C when he made the application before the district court on remand from this court. In doing so, the district court revisited factual findings that the original sentencing court had made more than, at that point, 19 years earlier to find that the conservative estimates that were used by that judge at the time of his resentencing, and then also affirmed by this court later in 2002, were aggravators and presented enough aggravation that the court could not reduce the sentence down to the 360 months that was requested by Mr. Jennings. In doing so, the court placed the 3553A factors that were being considered under 1B1.10 as part of the request for the sentence reduction at an imbalance and elevated the aggravating factor of the conservative drug estimate above the post-sentencing conduct that Mr. Jennings had presented to the district court. He was an exemplary prisoner. He had no disciplinary record. He had avowed himself of every program and educational opportunity that was presented to him while he was incarcerated over the 19 years that he had been in prison. Right before the resentencing . . . The argument is that the district judge made a new finding on quantity? Not only that he made a new . . . Can you explain what that is? I'm having a little trouble figuring out what the new finding is. Okay. So at the original district court proceeding, Judge Munson had made a determination in the face of the defendant's objections to the calculation about the drug estimates that he would use specific periods of time to calculate the drug amounts. And that that period of time was used and those drug amounts were used because that was the most reliable information that was available to the court at the time. And it specifically stated in paragraph 25 and in paragraph 107 of the PSR that those calculations were used because they were more reliable than what was being offered. And in the period of time that the conspiracy . . . for the period of time that the conspiracy existed. So prior to 1997, the court couldn't assess the amount of drugs that was being used. And the PSR in probation couldn't assess what the amount of drugs that were being . . . I'm sorry . . . that were involved.  I'm looking at page 188. He finds the equivalent of 275,000 kilograms of marijuana. Correct. And says this estimate does not even include the drugs distributed prior to August 1997. Correct. And if the court . . . Is this different from what happened on the reduction? If you were to look at the full record in making that determination and in what the recommended sentencing findings were in the PSR, which were adopted by Judge Munson as well. In face of the objections that were presented by original trial counsel. The period of time prior to 1997, the testimony during trial, the overt acts that are alleged in the indictment . . . And then the overt acts and evidence, actual evidence of seizures and amounts that were seized from individuals during the trial and cited to in paragraph 25. None of that information and none of those facts contain incidences of drug dealing and any sort of act of . . . Roughly 1996. There's only . . . The only references to any sort of action in relation to the conspiracy are about wire transfers that occurred in 1995. So, Judge Munson in making that decision adopts the finding or adopts the conclusion that the most reliable estimates of the drug amounts . . . Occurred during a 10-month period for the crack cocaine, a 13-month period for the powder cocaine and a 17-month period for marijuana. Judge McAvoy, in his determination for denying the reduction, decides that there's some 13-month period that existed that he believed that Judge Munson had examined. And that there was some other period of time before that, in which those drugs were not accounted for. And in doing so, not only did he revisit those factual determinations, but he also included in that finding, in using the drug . . . In finding that more drugs were involved, amounts of drugs that had specifically been excised by Judge Munson, under the risk of double counting. So, in attempting to adopt what I believe were the statements that were presented in the section in the PSR in paragraph 107 . . . Addressing possible upward departures, back 19 years ago. He didn't look at what the current record was and the errors that existed in the PSR . . . In the interim, between the original sentencing in 2000 and the request for reduction in 2017. He had been alerted to the fact, by myself, that there were . . . that there was a certain error about the mandatory minimum. And that maybe an amended or an addenda to the PSR might be appropriate. But, that had not occurred. So, in doing that, what he did was he elevated the drug amount and made that an aggravator . . . To the extent that it then threw off the balance of the other 3553A factors that were presented by Mr. Jennings . . . In the hopes that he would get the full reduction, which he had requested, down to 360 months. And in doing so, he also contributed to a level of sentencing disparity. Council presented a similar set of cases with a 3582C proceedings . . . Of five co-defendants who had been involved in a similar drug conspiracy . . . In a similar size city in Missouri, in the Fort case. And five of those co-defendants, two of whom had been indicted for murder . . . And, the underlying conspiracy was run with a significant amount of violence and enforcement. So, way more egregious than what Mr. Jennings had . . . The acts that were the underlying conduct in his case. And, they were reduced all the way down to 360. Did you want to do rebuttal time now, or reserve? I'll reserve my two. Thank you. May it please the Court, Karina Schoenberger for the United States. The District Court here reduced Mr. Jennings' sentence from life down to 420 months. And, that decision should be affirmed. In arriving at his decision, Judge McAvoy made no new factual findings. And, in fact, he had no authority to make new factual findings. He was limited only to applying the amended guidelines, and that's what he did here. The operative drug quantity was the originally estimated 275,000 kilogram weight for marijuana. That was Judge McAvoy's starting point. And, in fact, that was the defendant's starting point. He based his sentence reduction memo on that quantity. There's no dispute that that was the applicable quantity. And, that is what was changed as a result of the guideline amendments. The argument seems to be that the statement that the defendant received the benefit of conservative drug quantity calculations is a mischaracterization, or a reworking of what happened at the original sentencing. First of all, that was a characterization that was found by Judge Munson, the original sentencing court. And, it was accurate at the time, and it remained accurate at the time of the sentence reduction proceedings. And, just to clarify, to break it down a little bit, it is paragraph 25 of the pre-sentence investigation report that describes where this estimate came from. And, each of the three drugs involved in the conspiracy was looked at at a different time period. And, that was just by virtue of the evidence that was received from conspirators who gave debriefings. So, as my colleague pointed out, for cocaine-based, the period of time was 10 months within the three-year conspiracy. Powder cocaine was 13 months within the same time frame, and marijuana was 17 months. The pre-sentence report noted that there was not reliable information for other than those periods of time. So, there was no effort to extrapolate those numbers, or to put any quantification on periods of the conspiracy that weren't within those time periods. And, moreover, it determined that it would not include the weights that had been actually measured from drugs that were involved in controlled sales, or that had been seized from Mr. Jennings and his co-conspirators. And so, that is why the judge had said originally that it was a conservative estimate. There was a misstatement in the original sentencing decision where he said, this doesn't even include drugs from prior to August. That was a misstatement because for marijuana, it actually went large. Correct. But, it also cut the other way because for crack cocaine, that began in August. So, in fact, it began in October, pardon me. So, there was only one that began in August. So, there was a little bit of misstatement. But, nevertheless, it didn't change the fact that, in fact, it was a conservative estimate. Judge Munson, who had originally sentenced Mr. Jennings, had also presided over the trial. He was certainly entitled to accept the facts in the pre-sentence investigation report, which he did. And then, of course, Judge McAvoy, at the sentence reduction stage, was required to follow the factual findings of the original sentencing court. So, even if there had been an error, he would have been bound by them. But, in fact, there was no error here. Accordingly, he arrived at what was now the appropriate guidelines range, which was 360 months to life. Again, there's no dispute that that was the appropriate range. 360 months was the absolute farthest that he could go down. He did not have any authority to sentence Mr. Jennings below that guidelines range in these particular circumstances. He looked at both the aggravating and mitigating facts here, and he determined that it was not appropriate to reduce his sentence all the way to 360 months. But, given his good conduct in prison, his deportability, and other factors that he considered, it was appropriate to reduce his sentence down to 420 months, which he did. There was no abuse of discretion there. Unless the court has further questions, the government will rely on its papers for the remainder of its points and ask that the decision be affirmed. Just very quickly, I just wanted to follow up with the contribution to the disparate sentence. Mr. Jennings cited to the United States v. Rivera case and alerted the district court to that case as a decision that found that there was error in a 3582C resentencing when the court relied on a PSR that contained an error about what the currently applicable mandatory minimum was. Analogously, this court, in using the current PSR and taking from the current PSR the recommendations that were relayed in paragraph 107, equally relied on erroneous recommendations. It would have been a better course, as was recommended in Rivera, for the court to have requested an amended addenda or supplement to the PSR. There was some confusion at sentencing whether that had been done. Apparently, the court had received a confidential probation recommendation, which the defense was not privy to. And as a result, we were not put on notice that the court would be using the previously not used drug amounts as part of the aggravating circumstances to refute the exemplary conduct that Mr. Jennings had carried out over the course of the 19 years. I would request that the sentence be vacated and remanded for further proceedings. Thank you both.